Michael T. ROTHWELL, Petitioner–Appellant,

v.

Susan HUBBARD, Warden, et al., Respondents–Appellees.

No. 02–15801.

D.C. No. CV–98–2180–GEB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 2003.

Decided Aug. 12, 2003.

----

**2.** *See United States v. Morales,* 108 F.3d 1031, 1037 (9th Cir.1997) (en banc).

**3.** *See* Fed.R.Evid. 701.

Before REINHARDT, SILER,* and HAWKINS, Circuit Judges.

MEMORANDUM **

Petitioner Michael T. Rothwell appeals the district court's denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rothwell challenges his conviction, arguing that his due process rights to a fair trial were violated as a result of judicial bias. Because the California court's rejection of Rothwell's judicial bias claim was neither contrary to, nor involved an unreasonable application of, controlling Supreme Court precedent, we AFFIRM.

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## I.

In January 1983, while Rothwell was awaiting trial on state charges of murder, assault with a deadly weapon, and false imprisonment, his attorney asked California Superior Court Judge Dwight Ely, to whom the case had not yet been assigned for trial, to grant permission for Rothwell to marry his alleged common-law wife, Barbara Spaniol. Judge Ely granted the request, and allowed Rothwell to be temporarily removed from custody for purposes of a wedding ceremony.[1] Unbeknownst to Judge Ely, Spaniol was a potential witness for the prosecution in Rothwell's murder case. Rothwell had allegedly told Spaniol of his shooting crime and she had communicated that information to law enforcement officials when Rothwell was arrested. According to two newspaper articles published shortly before Rothwell's first trial in June 1983, Judge Ely's mistake may have created an obstacle for the prosecution since Spaniol allegedly had a privilege not to testify against her husband.[2] The issue ultimately proved moot because Spaniol could not be located before trial.

Rothwell's case proceeded to trial before another judge in June 1983, but ended in a mistrial due to juror misconduct. A new trial then began before Judge Ely. Although Rothwell was aware of the facts that allegedly disqualified Judge Ely from presiding over his case, he did not file a motion to recuse Judge Ely under California Code of Civil Procedure § 170.3(c)(1) nor did he peremptorily challenge Judge Ely under code § 170.6. Subsequently, a

---

1. It is unclear whether Judge Ely conducted the wedding ceremony.

2. The accuracy of this assertion is not before us on appeal.

jury convicted Rothwell of all counts and allegations, finding the murder to be in the second degree. He was sentenced to twenty-two years and eight months to life in prison. The California Court of Appeal affirmed the judgment and Rothwell did not seek review in the California Supreme Court. The issue of judicial bias was raised for the first time in a state habeas petition filed in 1994. Thereafter, the state habeas claim was denied by the Solano County Superior Court, the California Court of Appeal, and the California Supreme Court. Rothwell then filed a petition for a writ of habeas corpus in federal district court, which denied the writ. We granted a certificate of appealability on the judicial bias issue.

## II.

Rothwell's habeas petition, filed in 1998, is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under those standards, a federal court may grant relief if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See Williams v. Taylor, 529 U.S. 362, 404–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## III.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). To succeed on a judicial bias claim, however, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Of course, "most matters relating to judicial disqualification [do] not rise to a constitutional level." FTC v. Cement Inst., 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948) (citation omitted).

In the instant case, Rothwell argues that having tricked Judge Ely into allowing him to marry Spaniol, an incident that received some press coverage, Judge Ely was "disposed to view [him] in less than neutral light." Rothwell maintains that this fact alone was significant enough to warrant a presumption of bias—regardless of whether actual bias in fact existed. See, e.g., Taylor v. Hayes, 418 U.S. 488, 501, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) ("the inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused") (internal quotation marks and citation omitted). This argument is without merit. Regardless of Rothwell's skullduggery, and any ensuing embarrassment or annoyance Judge Ely may have felt, Judge Ely had no direct, personal, and substantial interest in seeing Rothwell convicted of murder or any other related charge. See Paradis v. Arave, 20 F.3d 950, 958 (9th Cir.1994) ("[D]efendants are entitled to a judge who has no direct personal interest in the outcome of a proceeding.") (citation omitted), cert. denied, 513 U.S. 1117, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995). Although Judge Ely may not have thought highly of Rothwell because of his unscrupulous behavior, based on the facts of this case, and "a realistic appraisal of psychological tendencies and human weakness," Withrow, 421 U.S. at 47, 95 S.Ct. 1456, it is extremely unlikely that Judge Ely would be so petty as to be unable to rise above the potential-

ly biasing influence in order to uphold the constitution and administer impartial justice as required by his oath. In fact, this case is analogous to *Ungar v. Sarafite,* 376 U.S. 575, 584–85, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), where the Court held that not all contemptuous conduct by a person disqualifies a judge from presiding over that individual at a post-trial contempt hearing.[3]

AFFIRMED.

---

3. This case also does not present the situation of actual bias. *See Murchison,* 349 U.S. at 136, 75 S.Ct. 623 ("Fairness of course requires the absence of actual bias in the trial of cases."). Furthermore, Rothwell's request for an evidentiary hearing to explore his judicial bias claim is also denied. As Rothwell's counsel forthrightly conceded during oral argument, based on the facts of this case, remand to the district court would accomplish nothing. Moreover, Rothwell has not satisfied the statutory hurdles of 28 U.S.C. § 2254(e)(2).

